IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIANCA MORRIS, both individually and on behalf of a class of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE COUNTY OF ALLEGHENY, ORLANDO HARPER individually and in his official capacity as Warden of the Allegheny County Jail, DAVID ZETWO, individually and in his official capacity as Chief Deputy Warden of the Allegheny County Jail, and SIMON WAINWRIGHT, individually and as Deputy Warden of the Allegheny County Jail,<br><br>Defendants. | Civil Action No.: 2:19-cv-1639<br><br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S CLASS ACTION COMPLAINT

AND NOW comes the Plaintiff, Bianca Morris, both individually and on behalf of a class of others similarly situated, by and through her undersigned counsel, D. Aaron Rihn, Esquire, Sara J. Watkins, Esquire, and the law firm of Robert Peirce & Associates, P.C., makes claims for damages against the Defendants, the County of Allegheny, Orlando Harper, David Zetwo, and Simon Wainwright, and in support thereof avers as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Allegheny County, Orlando Harper, individually and in his official capacity as Warden of the Allegheny County Jail, David Zetwo, individually and in his official capacity as Chief Deputy Warden of the Allegheny County Jail, and Simon Wainwright, individually and in his official capacity as Deputy Warden of the Allegheny County Jail (hereinafter collectively referred to as "Defendants"), pursuant to 42 U.S.C. § 1983 and state

law, for the unauthorized, illegal, and unreasonable searches by Defendants that violate Plaintiff's and Class Members' rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and violations of Plaintiff's and Class Members' privacy.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action under the provisions of 28 U.S.C. §§ 1331, 1341 & 1343 because it is filed to obtain compensatory damages and injunctive relief for the deprivation, under color of state law, of the rights of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. § 1983. This Court also has jurisdiction over this action under the provisions of 28 U.S.C. § 2201, as it is filed to obtain declaratory relief relative to the constitutionality of the policies of a local government.

3.  Venue is proper under 28 U.S.C. § 1391(e)(2) because the events or omissions giving rise to Plaintiff's and Class Members' claims occurred within this judicial district.

4.  Defendant County of Allegheny is a county government organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Allegheny County, as well as its agents, servants, and employees, was responsible for the policies, practices, supervision, implementation, and conduct of all matters pertaining to the Allegheny County Jail, as well as for the appointment, training, supervision, and conduct of all Allegheny County Jail personnel.

## PARTIES

5.  Defendant County of Allegheny is a county government organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Allegheny County, as well as its agents, servants, and employees, was responsible for the policies, practices,

supervision, implementation, and conduct of all matters pertaining to the Allegheny County Jail, as well as for the appointment, training, supervision, and conduct of all Allegheny County Jail personnel.

6. The County of Allegheny's principal place of business is 101 County Courthouse, 436 Grant Street, Pittsburgh, Pennsylvania 15219. The Allegheny County Jail is located at 950 Second Avenue, Pittsburgh, Pennsylvania 15219.

7. Plaintiff Bianca Morris is a citizen of the United States, and currently resides at 4577 Lake Park Avenue, Chicago, Illinois 60653.

8. At all times relevant hereto, Defendant Orlando Harper ("Warden Harper") was the duly appointed Warden of the Allegheny County Jail, and as such, was a policy maker with respect to the treatment of pretrial and other detainees over which the jail exercises custodial or other control. Warden Harper's principal place of business is the Allegheny County Jail, 950 Second Avenue, Pittsburgh, Pennsylvania 15219. Warden Harper is a Defendant in this action in both his individual and official capacities.

9. At all times relevant hereto, Defendant David Zetwo ("Chief Deputy Warden Zetwo") was the duly appointed Chief Deputy Warden of the Allegheny County Jail, and as such, was a policy maker with respect to the treatment of pretrial and other detainees over which the jail exercises custodial or other control. Chief Deputy Warden Zetwo's principal place of business is the Allegheny County Jail, 950 Second Avenue, Pittsburgh, Pennsylvania 15219. Chief Deputy Warden Zetwo is a Defendant in this action in both his individual and official capacities.

10. At all times relevant hereto, Defendant Simon Wainwright ("Deputy Warden Wainwright") was the duly appointed Deputy Warden of the Allegheny County Jail, and as such, was a policy maker with respect to the treatment of pretrial and other detainees over which the jail

exercises custodial or other control. Deputy Warden Wainwright's principal place of business is the Allegheny County Jail, 950 Second Avenue, Pittsburgh, Pennsylvania 15219. Deputy Warden Wainwright is a Defendant in this action in both his individual and official capacities.

11. Collectively, Warden Harper, Chief Deputy Warden Zetwo, and Deputy Warden Wainwright will be referred to as the "Policy Making Defendants."

12. At all times relevant hereto, Defendants, individually and/or collectively, were acting under the color of state law.

## CLASS ACTION ALLEGATIONS

13. Plaintiff brings two actions pursuant to Rules 23(b)(1), 23(b)(2), 23(b)(3), and Rule 23(c)(4)(a) of the Federal Rules of Civil Procedure on behalf of herself and a class of similarly situated individuals admitted to the custody of the Allegheny County Jail during the proposed class period.

14. **Class Definition—Class I:** the first Class that Plaintiff seeks to represent is defined as follows:

> All detainees in the custody of the Allegheny County Jail who were held in housing units where correctional officers of the opposite sex were assigned to posts within open view of unclothed detainees, including, but not limited to: when detainees were using the restroom, showering, or changing clothes. The class period commences on December 18, 2018 and extends to the date on which Allegheny County is enjoined from, or otherwise ceases, enforcing its policy, practice, and custom of assigning correctional officers to posts within open view of unclothed detainees of the opposite sex. Specifically excluded from the Class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees, or assignees.

15. **Class Definition—Class II**: the second Class that Plaintiff seeks to represent is defined as follows:

> All detainees in the custody of the Allegheny County Jail who were strip searched in areas where correctional officers of the opposite sex were posted within visibility

of the detainees. The class period commences on December 18, 2018 and extends to the date on which Allegheny County is enjoined from, or otherwise ceases, enforcing its policy, practice, and custom of assigning correctional officers of the opposite sex to posts within view of detainees being unclothed and strip searched. Specifically excluded from this Class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees, or assignees.

16. This action has been brought and may properly be maintained as a Class Action under Federal Law and satisfies the numerosity, commonality, typicality, and adequacy requirements of maintaining a class action under Fed. R. Civ. P. 23(a).

17. The members of the Classes are so numerous as to render joinder impracticable. Upon information and belief, there are thousands of citizens who are held in custody at the Allegheny County Jail every month—most, if not all, of whom are members of the Proposed Class. Upon information and belief, the size of each of the Proposed Classes totals at least tens of thousands of individuals, some of whom have had their civil rights violated on multiple occasions.

18. Upon information and belief, joinder of all of these individuals is impracticable because of the large number of Class Members and the fact that Class Members are likely dispersed over a large geographical area, with some members presently residing outside of the Commonwealth of Pennsylvania and this Judicial District. Furthermore, upon information and belief, many members of the Classes are low-income persons, may not speak English, and likely would have great difficulty in pursuing their rights individually.

19. There are common questions of fact and law affecting members of the Classes, which common questions predominate over questions which may affect individual members. Common questions of law and fact exist as to all members of the Classes, in that all members of the classes had their right to privacy violated, either by: (1) Defendants' policy, custom, or practice of assigning correctional officers of the opposite sex to posts where they viewed the detainees in

the nude, including, but not limited to instances where the detainees were using the restroom, showering, and/or changing clothes; and/or (2) Defendants' policy, custom, or practice of assigning correctional officers to posts within the sight of detainees of the opposite sex being strip searched. All members of the Classes were housed in the Allegheny County Jail and were viewed by correctional officers of the opposite sex when in states of nudity.

20.     Plaintiff Bianca Morris' claims are typical of the claims of the members of the Classes. Plaintiff Bianca Morris and all members of the Classes sustained damages arising out of Defendants' course of conduct. The harms suffered by Plaintiff Bianca Morris are typical of the harms suffered by the members of the Classes.

21.     The representative Plaintiff, Ms. Morris, has the requisite personal interest in the outcome of the action and will fairly and adequately protect the interests of the Class. Plaintiff Bianca Morris has no interests that are adverse to the interests of the members of the Class.

22.     Plaintiff Bianca Morris has retained counsel with substantial experience in the prosecution of class action and civil rights litigation, including successful litigation of civil rights cases. Plaintiff's counsel has the resources, expertise, and experience to successfully prosecute this action against Defendants. Counsel for the Plaintiff knows of no conflicts among the members of the Classes or between counsel and members of the Classes.

23.     This action, in part, seeks declaratory and injunctive relief. As such, the Plaintiff seeks Class Certifications under Fed. R. Civ. P. 23(b)(2), in that all Members of the Proposed Class were subjected to the same policies and actions of the Defendants. In short, Defendants acted on the grounds generally applicable to all members of the Class.

24.     In addition to certification under Rule 23(b)(2), and in the alternative, Plaintiff seeks certification under Rule 23(b)(3).

25. Common questions of law and fact exist as to all members of the Class and predominate over any questions that affect only individual members of the class. These common questions include: (1) whether Defendants' written and/or *de facto* policy of assigning correctional officers of the opposite sex to posts where they continually view detainees in the nude is unconstitutional, and whether such written and/or *de facto* policies existed during the Class period, and (2) whether Defendants' written and/or *de facto* policy of assigning correctional officers of the opposite sex to posts where they view detainees in the nude while detainees are being strip searched is unconstitutional, and whether such written and/or *de facto* policies existed during the Class period.

26. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all of the individual members of the Class is impracticable given the large number of members of the Class and the fact they are dispersed over a large geographical area. Furthermore, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the federal court system of adjudicating thousands of individual cases would be enormous. Individualized litigation also would magnify the delay and expense to all parties and the court system. By contrast, the conduct of this action as a Class Action in this District presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each member of the Classes.

27. Upon information and belief, there are no other actions pending to address the Defendants' violation of the civil rights of tens of thousands of individuals, even though upon information and belief the Defendants have maintained their illegal practices for several years.

28. In the alternative to certification under Fed. R. Civ. P. 23(b)(3), Plaintiff also seeks partial certification under Fed. R. Civ. P. 23(c)(4).

## FACTS

### Fact Applicable to the Class Allegation I

29. In the Allegheny County Jail, detainees are housed in six separate pods or cell blocks.

30. The pods within the Allegheny County Jail are typically single-gender.

31. Within the pods are large areas for detainees to congregate during the day, often referred as dayrooms.

32. On the perimeter of the dayrooms are rows of cells for the detainees to be housed.

33. Each cell typically houses two detainees. Within each cell is a toilet and sink. The toilet is freestanding with no barrier for privacy.

34. The door to the cell is solid metal with a window into the cell.

35. During times that detainees must be confined to their cells, correctional officers must make rounds to ensure that the detainees are in their cells.

36. Routinely, correctional officers of the opposite sex are assigned to posts where they are required to look into each cell to take count.

37. Accordingly, correctional officers of the opposite sex often observe detainees in states of undress in their cells while the detainees are using the restroom or changing clothes.

38. The Defendants do not have a policy of assigning correctional officers of the same sex to posts where detainees are often nude.

39. The Defendants do not have a policy of announcing when a correctional officer of the opposite sex is approaching the detainees' cell, thus preventing the detainees to cover up their genitals and/or breasts.

40. The Plaintiff acknowledges that taking count of detainees when they are in their cells is important and necessary. It is unnecessary, however, for detainees, such as the Plaintiff and members of the proposed classes, to have their genitals and/or breasts exposed to correctional officers of the opposite sex while the detainees are using the restroom, changing their clothes, and/or showering. This policy, pattern and/or custom of the Defendants is unconstitutional and unnecessary.

41. Upon information and belief, Defendants instituted a written and/or *de facto* policy, custom, or practice of posting correctional officers of the opposite sex to posts where they viewed detainees in the nude. Upon information and belief, Defendants did not have a policy, custom, or practice of ordering the correctional officers of the opposite sex from announcing themselves before they approached the detainees in states of nudity.

42. Defendants' policies, practices, and customs, as addressed above, are both offensive and absurd considering the important privacy interests that detainees hold as it relates to their naked bodies.

43. Pursuant to these written and/or *de facto* policies, each member of the Classes, including Plaintiff, were exposed to correctional officers of the opposite sex while in states of undress. Taking count in this way is unreasonable, as there is no justification for detainees to have their nude bodies exposed to correctional officers of the opposite sex without being given an opportunity to cover up.

44. As a direct and proximate result of being exposed to correctional officers of the opposite gender pursuant to these written and/or *de facto* policies, the victims of the unlawful practices—each member of the Classes, including Plaintiff—has suffered or will suffer psychological pain, humiliation, and mental anguish.

### Fact Applicable to the Class Allegation II

45. Oftentimes, in the Allegheny County Jail, detainees are strip searched to check for contraband.

46. During strip searches, the detainees remove all of their clothing and correctional officers check under the detainees' feet and armpits, between their buttocks, and around their genitals. Men are required to lift their testicles, and women are required to lift their breasts.

47. Due to the extremely intrusive nature of strip searches, strip searches should be held in a secluded area and conducted by a correctional officer of the same gender as the detainee.

48. However, the Allegheny County Jail routinely conducts strip searches of detainees in an open area with correctional officers of the opposite sex nearby and observing the detainees in the nude as their bodies, including their cavities, are being examined.

49. The Defendants do not have a policy that requires correctional officers of the same sex as the detainees to be assigned to posts where strip searches are being conducted within visibility.

50. The Defendants do not have a policy that prohibits strip searches from being conducted in open areas where correctional officers of the opposite sex may inadvertently be in.

51. Rather, the Defendants can and do conduct strip searches in open areas with correctional officers of the opposite sex viewing the exposed detainees.

52.     The Plaintiff acknowledges that conducting strip searches to check for contraband is important and necessary. It is unnecessary, however, for detainees, such as the Plaintiff and members of the proposed classes, to be strip searched in the presence of correctional officers of the opposite sex.

53.     Upon information and belief, Defendants instituted a written and/or *de facto* policy, custom, or practice of posting correctional officers of the opposite sex to posts where they viewed detainees being strip searched. Upon information and belief, Defendants had a policy, custom, or practice of permitting strip searches in open areas where correctional officers of the opposite sex may inadvertently be.

54.     Defendants' policies, practices, and customs, as addressed above, are both offensive and absurd considering the important privacy interests that detainees hold as it relates to their naked bodies.

55.     Pursuant to these written and/or *de facto* policies, each member of the Classes, including Plaintiff, were exposed to correctional officers of the opposite sex while in stages of undress. Conducting strip searches in this way is unreasonable, as there is no justification for detainees to have their nude bodies exposed to correctional officers of the opposite sex.

56.     As a direct and proximate result of being exposed to correctional officers of the opposite gender pursuant to these written and/or *de facto* policies, the victims of the unlawful practices—each member of the Classes, including Plaintiff—has suffered or will suffer psychological pain, humiliation, and mental anguish.

### Facts Specific to Plaintiff Bianca Morris

57.     Plaintiff Bianca Morris was taken into custody of the Allegheny County Jail on January 4, 2018 and was released on bail on April 16, 2018.

58. All of Ms. Morris' charges were later dismissed.

59. Over the four months when Ms. Morris was held at the Allegheny County Jail, Ms. Morris was strip searched numerous times.

60. Often times when Ms. Morris was strip searched, she was not in a secluded area. Further, while Ms. Morris was always strip searched by a female correctional officer, male correctional officers were often mere feet away, observing the strip search being conducted and saw her naked body being examined.

61. Additionally, while being housed in her all female pod, Ms. Morris was observed by male correctional officers while she was using the toilet.

62. Specifically, Ms. Morris was housed in a pod with other female detainees.

63. Male correctional officers were posted within the all-female pod.

64. When Ms. Morris and other detainees were required to be locked in their cells, male correctional officers were assigned to look through the women's cell windows to take count.

65. As it follows, Ms. Morris genitals, buttocks, and breasts were viewed by correctional officers while she was in her cell utilizing the toilet and changing clothes.

66. The male correctional officers assigned to take count of the female detainees and look into the females' cells did not alert the women that they were approaching; therefore, the women could not cover up their naked bodies before the male correctional officers looked into their cells.

67. Throughout the period when the incidents occurred, Ms. Morris was a pretrial detainee that had not yet been convicted of any crimes. Such detainees retain at least those constitutional rights that are enjoyed by convicted prisoners, including a right to prevent their naked bodies and genitals from being viewed by members of the opposite sex.

68. Defendants' conduct of monitoring pretrial detainees of the opposite sex while using the toilet and being strip searched constitutes an unreasonable search of pretrial detainees in violation of the Fourth and Fourteenth Amendments. Further, Defendants' conduct constitutes an invasion of Plaintiff's privacy.

69. As a direct and proximate result of the unlawful strip searches conducted pursuant to a written and/or *de facto* policy, Plaintiff has suffered psychological pain, humiliation, and mental anguish.

**COUNT I/CLASS I– VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983**
**(As to all Defendants)**

70. The averments of the previous paragraphs are incorporated by reference as if fully set forth herein.

71. Section 1983 provides that: "every person who, under color of [law] of any State. . . . subjects, or causes to be subjected, any [person] to the deprivation of any rights. . . secured by the Constitution and laws, shall be liable to the party injured in an action at law. . ." 42 U.S.C. § 1983.

72. Actions against state officials seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983.

73. Pretrial detainees, including Plaintiff, are "persons" within the meaning of 42 U.S.C. § 1983.

74. At all relevant times, Defendants acted under the color of state law.

75. Defendants have a policy of continuously monitoring pretrial detainees of the opposite sex using the toilet and viewing their genitals when using the toilet, showering, or changing their clothes, as Defendants assigned correctional officers of the opposite sex to posts

where the officers were required to look into the pretrial detainees' cells to take count. Defendants did not have a policy or custom of ordering correctional officers of the opposite sex to announce themselves prior to approaching detainees that may be in the nude.

76. Because of the pervasive interest all individuals have in their personal dignity, pretrial detainees specifically have been recognized to retain rights under the Fourth and Fourteenth Amendments to the United States Constitution. U.S. Const. Amend IV and XIV.

77. Defendants' policy and conduct of correctional officers of the opposite sex viewing Plaintiff's and Class members' genitals when they are using the toilet and changing clothes in their cells constitutes an unreasonable search in violation of the Fourth and Fourteenth Amendments to the United States Constitution. U.S. Const. Amend. IV and XIV.

78. Even in a holding cell, pretrial detainees retain an expectation of privacy regarding their naked bodies, genitals, and bodily functions, especially when viewed by members of the opposite sex.

79. Acting under color of state law, the Policy Making Defendants intentionally deprived Plaintiff of her constitutional rights protected under the Fourth amendment, as provided by the Due Process clause of the Fourteenth Amendment and as made actionable against these Defendants by and through 42 U.S.C. § 1983, by instituting a written and/or *de facto* policy of having correctional officers or other employees view pretrial detainees of the opposite gender when they are undressing and using the toilets and showers.

80. Defendants' conduct and policy of monitoring Plaintiff continuously while undressing and using the toilets and showers, constitutes an unreasonable search in violation of the Fourth and Fourteenth Amendments to the United States Constitution. U.S. Const. Amend. IV and XIV.

81. Throughout the four months when Plaintiff was a pretrial detainee, Defendants had official policies or customs that constituted a deliberate indifference to Plaintiff's constitutional right to bodily privacy and liberty for pretrial detainees protected by the Fourth and Fourteenth Amendments, specifically:

   a. The right not to be subjected to naked detention for a substantial period, especially the involuntary exposure of genitals to the opposite sex, unless it is reasonably necessary;

   b. The right not to be subjected to cross-gender removal of clothing unless it is reasonably necessary; and,

   c. The right not to be subjected to cross-gender supervision in one's most intimate moments such as getting undressed, using the restroom, and showering.

82. The official policies, procedures, and/or customs include one or more of the following actions or inactions by the Defendants:

   a. Failure to formulate policies to prevent a violation of constitutional rights;

   b. Having policies or customs that expressly approve the violation, or implicitly tolerate the violation, or create a substantial risk that violation will occur;

   c. Failure to train on these constitutional rights;

   d. Failure to enforce these rights with disciplinary actions; and,

   e. Failure to supervise conditions to discover violations of the constitutional right and to take prompt, corrective action to restore the inmate's privacy.

83. Plaintiff acknowledges that searching and supervising detainees at the Allegheny County Jail is important and necessary. It is completely unnecessary, however, for detainees, such as Plaintiff, to be viewed by correctional officers of the opposite sex while the detainees use the

restroom, change their clothes, or shower. This policy, pattern, and/or custom of Allegheny County is patently unconstitutional and completely unnecessary. There is no reason why detainees at the Allegheny County Jail cannot be supervised in their most private moments by a correctional officer of the same sex, such that their privacy interest can be respected. Such a procedure can easily be accomplished at the Allegheny County Jail with minimal effort from jail staff.

84. As a direct result of Defendants' pattern, policy, and/or custom of assigning correctional officers of the opposite sex to posts where detainees are oftentimes in the nude, Plaintiff and Class Members suffered substantial damages including, but not limited to, shame, humiliation, embarrassment, emotional distress, and mental anguish from having their naked bodies exposed to members of the opposite sex.

### COUNT II/CLASS II– VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983
### (As to all Defendants)

85. The averments of the previous paragraphs are incorporated by reference as if fully set forth herein.

86. Section 1983 provides that: "every person who, under color of [law] of any State. . . subjects, or causes to be subjected, any [person] to the deprivation of any rights. . . secured by the Constitution and laws, shall be liable to the party injured in an action at law. . ." 42 U.S.C. § 1983.

87. Actions against state officials seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983.

88. Pretrial detainees, including Plaintiff, are "persons" within the meaning of 42 U.S.C. § 1983.

89. At all relevant times, Defendants acted under the color of state law.

90. Defendants have a policy of conducting strip searches in the presence of correctional officers of the opposite gender. Defendants have a policy of posting correctional officers of the opposite gender at posts within visibility of detainees being strip searched. Defendants also have a policy of allowing strip searches to be conducted in open areas where correctional officers of the opposite gender may be standing.

91. Because of the pervasive interest all individuals have in their personal dignity, pretrial detainees specifically have been recognized to retain rights under the Fourth and Fourteenth Amendments to the United States Constitution. U.S. Const. Amend IV and XIV.

92. Defendants' policy and conduct of posting correctional officers of the opposite sex within visibility of Plaintiff's and Class members' genitals when they are being strip searched constitutes an unreasonable search in violation of the Fourth and Fourteenth Amendments to the United States Constitution. U.S. Const. Amend. IV and XIV.

93. Even in jail, pretrial detainees retain an expectation of privacy regarding their naked bodies, genitals, and bodily functions, especially when viewed by members of the opposite sex.

94. Acting under color of state law, the Policy Making Defendants intentionally deprived Plaintiff of her constitutional rights protected under the Fourth amendment, as provided by the Due Process clause of the Fourteenth Amendment and as made actionable against these Defendants by and through 42 U.S.C. § 1983, by instituting a written and/or *de facto* policy of posting correctional officers of the opposite sex within view of detainees being strip searched.

95. Defendants' conduct and policy of strip searching Plaintiff within view of correctional officers of the opposite sex constitutes an unreasonable search in violation of the Fourth and Fourteenth Amendments to the United States Constitution. U.S. Const. Amend. IV and XIV.

96. Throughout the four months when Plaintiff was a pretrial detainee, Defendants had official policies or customs that constituted a deliberate indifference to Plaintiff's constitutional right to bodily privacy and liberty for pretrial detainees protected by the Fourth and Fourteenth Amendments, specifically:

   a. The right not to be subjected to naked detention for a substantial period, especially the involuntary exposure of genitals to the opposite sex, unless it is reasonably necessary;

   b. The right not to be subjected to cross-gender removal of clothing unless it is reasonably necessary; and,

   c. The right not to be subjected to cross-gender supervision in one's most intimate moments such as being strip searched.

97. The official policies, procedures, and/or customs includes one or more of the following actions or inactions by the Defendants:

   a. Failure to formulate policies to prevent a violation of constitutional rights;

   b. Having policies or customs that expressly approve the violation, or implicitly tolerate the violation, or create a substantial risk that violation will occur;

   c. Failure to train on these constitutional rights;

   d. Failure to enforce these rights with disciplinary actions; and,

   e. Failure to supervise inmate conditions to discover violations of the constitutional right and to take prompt, corrective action to restore the inmate's privacy.

98. Plaintiff acknowledges that strip searching detainees to check for contraband at the Allegheny County Jail is important and necessary. It is completely unnecessary, however, for detainees, such as Plaintiff, to be viewed by correctional officers of the opposite sex while the

detainees are being strip searched. This policy, pattern, and/or custom of Allegheny County is patently unconstitutional and completely unnecessary. There is no reason why detainees at the Allegheny County Jail cannot be supervised in their most private moments by a correctional officer of the same sex, such that their privacy interest can be respected. Such a procedure can easily be accomplished at the Allegheny County Jail with minimal effort from jail staff.

99. As a direct result of Defendants' pattern, policy, and/or custom of having correctional officers of the opposite gender within view of detainees being strip searched, Plaintiff and Class Members suffered substantial damages including, but not limited to, shame, humiliation, embarrassment, emotional distress, and mental anguish from having their naked bodies exposed to members of the opposite sex.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. Entry of a judgment against the County of Allegheny, Warden Harper, Chief Deputy Warden David Zetwo, and Deputy Warden Simon Wainwright for compensatory damages;

B. An award of attorney's fees and other costs of litigation; and,

C. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: December 18, 2019    */s/ D. Aaron Rihn*
D. AARON RIHN, ESQUIRE
Pa. ID No.: 85752
SARA J. WATKINS, ESQUIRE
Pa. ID No.: 325770
ROBERT PEIRCE & ASSOCIATES, P.C.
707 Grant Street
Suite 125
Pittsburgh, PA 15219

Tel: (412) 281-7229
Fax: (412) 281-4229
Email: arihn@peircelaw.com
          swatkins@peircelaw.com

*Counsel for Plaintiff*